Case No.    25-1486

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

---

UNITED STATES of AMERICA,
Appellee,
v.
JOHNNY BARROS BRANDAO,
Defendant-Appellant

---

ON APPEAL FROM A JUDGMENT AND SENTENCE
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

BRIEF AND ADDENDUM OF THE DEFENDANT-APPELLANT

---

Jillise McDonough
Law Office of Jillise M. McDonough
Court of Appeals No. 1202184
107 Union Wharf
Boston, MA 02109
(617) 263-7400
Jillise@Scapicchiolaw.com
*Counsel for the Defendant-Appellant*

# **TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . .    6

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

      Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

      Statement of Relevant Facts. . . . . . . . . . . . . . . . . . . . . . . . . .    7

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19
   I.     It was unduly prejudicial to inform the jury that Brandao
           had two pending murder charges when he allegedly made
           a false statement on a passport application. . . . . . . . . . . 19
   II.    Brandao's right to a fair and impartial jury was violated
           where jurors were not informed of the nature of the allegations
           so that the jurors could be fully vetted. . . . . . . . . . . 28
   III.   The court erroneously precluded Brandao from arguing the
           jury should hold it against the Government for not calling
           any witnesses from Cape Verde to explain the records, and
           for denying the request for a missing witness instruction. . . 31

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .38

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

# TABLE OF AUTHORITIES

**Cases**

*Chambers v. Mississippi*, 410 U.S. 284 (1973) ......................................................35

*Ham v. South Carolina*, 409 U.S. 524 (1973) ......................................................27

*Holmes v. South Carolina*, 547 U.S. 319, (2006).................................................35

*Morgan v. Illinois*, 504 U.S. 719 (1992) .......................................................27, 29

*Old Chief v. United States*, 519 U.S. 172 (1997). ..........................................20, 24

*Picciotto v. Continental Cas. Co.*, 512 F.3d 9 (1st Cir. 2008). .............................21

*Rosales-Lopez v. United States*, 451 U.S. 182 (1981)......................................27, 29

*Swain v. Alabama*, 380 U.S. 202 (1965). ..............................................................27

*Taylor v. Illinois*, 484 U.S. 400 (1988). ...............................................................32

*United States v. Bradley*, 390 F.3d 145 (1st Cir. 2004) ........................................24

*United States v. Diaz-Diaz*, 433 F.3d 128 (1st Cir. 2005).....................................31

*United States v. DiRosa*, 761 F.3d 144 (1st Cir. 2014);........................................20

*United States v. Garcia-Sierra*, 994 F.3d 17 (1st Cir. 2021). ..........................19, 26

*United States v. Houlihan*, 92 F.3d 1271 (1st Cir. 1996)......................................23

*United States v. Jimenez-Torres*, 435 F.3d 3 (1st Cir. 2006). .........................31, 32

*United States v. Johnson*, 467 F.2d 804 (1st Cir. 1972).......................................33

*United States v. Kilmartin*, 944 F.3d 315 (1st Cir. 2019) .....................................22

*United States v. Orlandella*, 96 F.4d 71 (1st Cir. 2024) .......................................35

*United States v. Perez*, 299 F.3d 1 (1st Cir. 2002);..............................................33

*United States v. Piper*, 298 F.3d 47 (1st Cir. 2002). ............................................22

*United States v. Ramos-Gonzalez*, 775 F.3d 483 (1st Cir. 2015).........................33

*United States v. Sandoval*, 6 F.4th 63 (1st Cir. 2021). ..........................................35

*United States v. Varoudakis*, 233 F.3d 113 (1st Cir. 2000)...................................21

*United States v. Villa-Guillen*, 102 F.4th 508 (1st Cir. 2024)............................22, 26

*Washington v. Texas*, 388 U.S. 14 (1967)..................................................................32

## Statutes

18 U.S.C §3231 .............................................................................................................4

18 U.S.C. § 1542 ...........................................................................................................5

18 U.S.C. § 3742 ...........................................................................................................4

28 U.S.C. § 1291 ...........................................................................................................4

## Other Authorities

Castrellon, et al, *Social Cognitive Processes Explain Bias in Juror Decisions*, Soc
Cogn Affect Neurosci., 2022 October...................................................................28

## Treatises

McCormick, Law of Evidence § 249, at 534 (1954)....................................................33

Wigmore on Evidence § 285 (3d ed. 1940)................................................................33

## JURISDICTIONAL STATEMENT

The U.S. District Court for the District of Massachusetts had original subject matter jurisdiction of this case under 18 U.S.C §3231 because the indictment charged Brandao with a federal offense against the U.S. which was allegedly committed in that District. The judgment entered on January 24, 2025.  Brandao filed a timely notice of appeal.

This Court has appellate jurisdiction over this case pursuant to 28 U.S.C. § 1291, 18 U.S.C. § 3742. and Fed.R.App.P. 4.

## **STATEMENT OF THE ISSUES**

I.    Whether it was unduly prejudicial for the jury to learn Brandao was charged with two separate homicides in Cape Verde when he applied for an emergency passport, or whether the jury could have sufficiently assessed his motive, intent and knowledge with evidence that he had "pending criminal charges" and was facing fifteen to thirty years on each offense at the time of the application.

II.   Whether not vetting jurors for any potential biases relating to the homicide allegations violated Brandao's right to a fair and impartial jury.

III.  Whether precluding the defense from arguing in any way that the Government's failure to call live witnesses from Cape Verde – and instead relying on documents to prove Brandao's guilt – should be held against them in determining whether they proved the passport fraud charge beyond a reasonable doubt violated Brandao's rights to due process and to present a complete defense.

## STATEMENT OF THE CASE

### Procedural History

A criminal complaint for one count of 18 U.S.C. § 1542, False statement in application and use of passport, was issued on May 7, 2023. R6. An indictment was returned on June 21, 2023. R8.

A jury trial commenced on September 30, 2024. (Gorton, J.). R15. The jury returned a guilty verdict on October 2, 2024. R16. A sentencing hearing was scheduled for January 13, 2025. R16. The court sentenced Brandao to a sentence of 60 months of incarceration, followed by two-years of supervised release. R16. Brandao filed a Notice of Appeal as to the conviction and sentence. R16.

### Statement of Relevant Facts

The government alleged that Johnny Barros Brandao, a United States citizen, made a false statement on an emergency passport application at the U.S. Embassy in Dakar, Senegal on December 28, 2022, indicating he had lost his passport on December 25, 2022 while out to dinner in Senegal. The government alleged that the passport was in the possession of Cape Verde authorities when Brandao applied for the emergency passport. The government's theory was that Brandao made this false statement to obtain an emergency passport to flee Cape Verde, where he was facing homicide charges and was prohibited from leaving the country.

<u>Evidence Relating to the Homicide Charges</u>

Brandao moved to exclude evidence of the criminal charges pending in Cape Verde, with a request that the Government be precluded from presenting evidence that Brandao was charged with murder. R437. Brandao requested that the Government be permitted only to state that Brandao had "pending criminal charges," and to exclude the underlying substance of the allegations. R437, 440.

The court denied Brandao's motion, and allowed the Government's request to inform the jury that Brandao was facing criminal charges, including homicide. The court imposed the following parameters, and inured the parties to propose language that fell within the parameters:

> First, it will be permitted to proffer that Mr. Brandao has been charged with, "serious offenses including homicide." But may not refer to any of the charges specifically other than the homicide charges.
> Second, it will be permitted to report the maximum penalties that Mr. Brandao faces for the charged offenses, but may not refer to any of the factual allegations underlying those charges.

R37-38.

In accordance with the court's ruling, the parties proposed language for the homicide charges (R163), and the jury was instructed as follows:

> The defendant, Johnny Brandao, was charged with serious offenses in Cape Verde, including two separate homicides. The potential penalty for a homicide conviction in Cape Verde is 15 to 30 years imprisonment. One homicide allegedly occurred on or around March 27, 2014, and the second homicide allegedly occurred on or around July 26, 2021. Mr. Brandao's

Cape Verdean trial on the above-referenced offenses has not yet occurred and the charges remain pending.

R255.

John Pigman, the Regional Security Officer for the U.S. Embassy in Praia, Cape Verde was permitted to testify, over objection, that he was aware of media attention in Cape Verde regarding the case against Johnny Brandao. R240.

The court provided a limiting instruction during its closing instructions to the jury, but declined to explore any potential bias during jury impanelment, and did not ask the question proposed by the defense to determine whether any biases existed:

> This case involves testimony about murder charges in a different country. Does the fact that murder charges are involved in the case cause you any concern about your ability to be fair and impartial?

R363.

Instead, the jury was instructed at the outset only that "Generally, the government charges Mr. Brandao with knowingly making a false statement on a passport application." R65. The jury learned for the first time during the Government's opening statement that Brandao was charged with two homicides in Cape Verde. R175.

In the closing charge to the jury, the court instructed as follows:

> You have heard evidence that the defendant was facing, and still is facing, charges of serious crimes, including homicide in Cape Verde. You may not consider that evidence to infer that, because of his character, the defendant

9

carried out the acts charged in this case. You may consider such evidence only for the limited purpose of deciding: First, whether defendant had a motive or the opportunity to commit the acts charged in the Indictment; and, second, whether defendant had the state of mind or intent necessary to commit the crime charged in the Indictment.

Remember, this is the only purpose for which you may consider evidence of the pending charges against the defendant. You may not consider them as evidence of his character to support an inference that he committed the acts charged in this case.

R342-343.

Among other statements relating to the murder charges, the Government emphasized in closing that, "[t]he motive here is critically important. What does he want to do? He wants to avoid justice for two murder charges." R332.

The Cape Verdean Documents

The Government's case largely rested on documents obtained from the Cape Verdean prosecutor's office, which indicated that Brandao was placed in pretrial custody in Cape Verde in August of 2021 and charged with two separate homicides, but was released approximately eighteen months later, and Ordered not to leave the country. Brandao moved to exclude the records on hearsay and confrontation grounds. The court excluded the search warrant indicating that Brandao's passport had been seized and a report outlining portions of the Cape Verdean investigations, but permitted the Government to admit records relating to the Cape Verdean proceedings, and chain of custody records relating to Brandao's passport, including the following records:

10

On the date of Brandao's release from Cape Verdean custody, the following

Order was entered:

> Since the notice of the public indictment against the defendant was declared null and void, and the 6-month period since his arrest has passed, the measure of pretrial detention has been extinguished by the elapsing the time limit.[1]
>
> I hereby dismiss the measure of pretrial detention applied to the defendant Johnny Brandao.
>
> I hereby order the immediate release of the defendant.
>
> R218, 506.

The Government was also permitted to introduce records claiming Brandao

was a flight risk due to his U.S. citizenship:

> As for the defendant Brandao, since he is a foreign citizen, he may leave the country at any time and run away from the action of justice. There is clearly a danger of flight.
>
> As a result, the defendants will await the conclusion of the proceedings, with a prohibition on leaving the country and contacting each other without the Court's permission, combined with the obligation to report to the judiciary police every week.
>
> Accordingly, the defendant should be released immediately.

---

[1] The charges were declared null and void because Brandao was never informed of the charges against him in his native language. R506. There are two languages spoken in Cape Verde, Creole and Portuguese. R248. Portuguese is the language primarily used by the court system. R248. Visitors to Cape Verde typically speak Creole. R248.

In due course, return the case file to the Public Prosecution Service for whatever action deemed appropriate. All those present were duly notified of the content of the orders and stated that they were aware of them.

R219, 507.

The following document was recorded the same day, which Ordered Brandao's identification to be returned:

In compliance with Official Letter No. 465/HO/2022 of December 12, 2022, from the 2nd Criminal Court of the Judicial District Court of Praia, the Human Resources, Finance and Assets Department of the Judiciary Police will return the following documents, seized from the defendant, Mr. Johnny Barros Brandao, in accordance with Investigation Record No. 10284/2021: One Cabo Verdean pass, No. 8467, One American passport, No. 2709, One Cabo Verdean, No. 5872

R220, 508.

A notice was also sent to the Director of Immigration and Border Services that Brandao was "interdicted from leaving the national territory, including ports."

R510.

A return receipt from the Judiciary Police stated that it "will return the following documents, seized from the defendant, Mr. Johnny Barros Brandao," and listed the three identification documents. R514.

The Clerk of Court then filed a "Remittance" with the following note:

On December 12, 2022, I remitted these case files to the Office of Federal Prosecution… 2 passports – 1 American and 1 Cabo Verdean – and 1 ID – belonging to the defendant, Johnny Barros Brandao

R220-221, 516.

**After Brandao's Release from Cape Verdean Custody**

On December 27, 2022, the U.S. Embassy in Senegal received an email signed by a "Johnny Barros Brandao" who requested assistance with securing an emergency passport. R185; R517. Senegal is the closest mainland to the islands that make up Cape Verde. R182-183.

Brandao also reported to the Embassy later that day, sometime after the email was sent, and returned the next day to be processed. R211. It is not uncommon for a person to report to the Embassy where officials will instruct the applicant as to which documents are necessary, for them to return the next day to be processed.

Justin Coburn was the Consular Officer who processed Brandao's passport application at the Embassy on December 28 when Brandao returned. R182, 184-185. When a person reports to the U.S. Embassy to report a lost or stolen passport, they first meet with a Senegalese person who works for the Embassy, and would be informed of what they need for the application. R183-184. The applicant would then fill out a DS-64, which is a lost or stolen passport form, and a DS-11, which is the application for a U.S. Passport. R184. The U.S. Embassy in Senegal only has the ability to issue an emergency passport, which is different than the regular 10-year full validity passport; the passport is purple, it has less security features, and it is only good for up to one year from the issuance date. R184. His role in the

13

process is to talk with the applicant and determine whether they were, in fact, a U.S. citizen entitled to a passport, and he would be the person to approve the passport. R184.

After Brandao first met with a Senegalese Embassy worker, then he went to Coburn's window where Coburn interviewed him, and reviewed a DS-64 and DS-11 that he provided; the forms were already filled out when Brandao met with Coburn, so Coburn did not witness Brandao actually fill out the forms. R187-188, 211, 213, 519, 520.[2] The DS-64 formed checked off that the U.S. Passport Book was lost. R189; R519. In the box that directed to "Explain in detail how your valid U.S. passport book/card was lost or stolen," it stated in penmanship, "I went out for dinner and the time I got back I had lost my passport." R190-191. For the block which directed "Explain where the loss or theft occurred. Provide the address, if known," it stated, "Dakar, Senegal." R191. For the block that asks on what date the U.S. passport book or card was stolen, it stated, "December 22, 2022." R191. Brandao included his identifying information on the DS-11 form, the address of a hotel in Dakar, Senegal as his physical address, which was required under Embassy policy, and a passport photograph. R197-198, 520.

---

[2] Along with his application, Brandao submitted a photocopy of the passport that he reported lost. R518.

14

At the bottom of the DS-11 form, Coburn signed as the officer who received the application, and also checked off that a DS-64 form was included with the application. R199-201. The form also confirmed that he verified Brandao's citizenship and passport records. R201.

Coburn conducted the interview with Brandao at the window, and claimed he remembered Brandao because most U.S. citizens he deals with are of Senegalese descent, but Brandao had more of a Portuguese name. R202-203. He claimed Brandao was also extremely friendly in a way that stuck out in his mind. R202. During the interview, Coburn asked Brandao how he lost his passport, and he indicated that he went to a restaurant, he believed on Christmas, and thought he lost it at dinner. R204. He was not certain where he lost it. R213. Brandao was in Senegal because he had traveled to and from Cape Verde, which made sense to Coburn because Dakar is the main airport hub for West Africa. R204.

Pigman, the Regional Security Officer at the U.S. Embassy in Cape Verde reached out to the embassy in Senegal in January of 2023 to inform them that they had provided Brandao with a passport, and that he had pending charges in Cape Verde. R255. Pigman the person in Cape Verde who was assisting the Department of Justice with investigating the matter. Pigman did not travel to the prosecutor's office in Praia, Cape Verde until May of 2023 to view the U.S. passport, the Cabo

Verdean passport, and the Cabo Verdean identity document that were held in the possession of the prosecutor's office. R243, 563.[3]

About a week and a half prior to his testimony, in September of 2024, he again viewed the documents through a Microsoft teams call and took a screenshot of each page. R245-246, 604.[4] There were no entry stamps to Senegal in the passport book. R246. He has heard before that you do not need to use a passport when traveling from Cape Verde to Senegal if you have an identification card, but he cannot say whether it is accurate because he has never had to do it before. R253. There were no travel stamps on the passport book on or after December 12, 2022. R247.

Agent Daniel Starr was the special agent assigned to the Boston field office with the Diplomatic Security Service, and his primary responsibility was to investigate passport and visa fraud. R267-268.

On March 8, 2023, Brandao submitted a DS-5504 application for a regular ten-year passport to replace a temporary/emergency passport. R264-265. The passport application was never approved. R265, 268, 581. On April 28, 2023, Brandao called the Information Center requested a status on his passport

---

[3] In his affidavit filled out in May of 2023, he indicated that the passports were in the possession of the Court, not the prosecutor's office. R249.
[4] The subject passport was issued on January 23, 2013. R260-261.

application, stating that he had travel scheduled for May 8. On May 5, Brandao went to the Boston passport office to inquire about the status of his application. R268-269.

Agent Starr learned from the individuals who interacted with Brandao on May 5 that he may be returning to the passport agency on May 8 to inquire about the status of his passport. R268. Officers attempted a surveillance operation in the Boston office to see if Brandao would come, but he did not show up that day. R269. As a result, they conducted a "ruse" call. R269. A ruse call is an attempt for an investigator to bring the subject of an investigation to a point in time to either interact with them, or in this case, to arrest the person. R270.

The passport customer service manager placed a phone call to Brandao and confirmed his name, date of birth, and the last four of his social security number, and made an appointment for him to come in on May 9; they also instructed Brandao to bring identity documents with him to prove his identity. R270. In anticipation, officers prepared an arrest plan. R270. When Brandao cleared security, he was placed under arrest for passport fraud, and he was searched incident to arrest; Brandao had his social security card, credit cards, a Massachusetts driver's license, a birth certificate, a marriage certificate, and a DS-11 form that listed the 12/28/2022 passport as his most recent Passport Book issued. R273-274.

17

The passport application submitted in Senegal (R521), indicated that Brandao was staying at the Yass Hotel in Senegal. R281. Agent Starr never went to the hotel or had anyone go on his behalf to determine what documentation the hotel requires to check in. R281. Agent Starr did not know if they have a policy that you need identification or a passport to check into the hotel. R281. He did not check with the hotel to see if they took any photocopies of any identification Brandao used to check into the hotel, nor did he check with the hotel to see if they had any video of Brandao checking into the hotel. R281.

## SUMMARY OF THE ARGUMENT

The court denied Brandao's request to either preclude the Government from presenting evidence that there were pending criminal charges in Cape Verde at the time of the passport application, or to preclude reference to the nature of the charges, in that Brandao was charged with two separate homicides. Brandao instead requested that the jury be informed only that Brandao had "pending criminal charges." The court denied this request and permitted the Government to introduce that Brandao was charged with serious offenses, including homicide, and the potential penalties he was facing, finding these facts bore on Brandao's motive, knowledge, and intent. This was in error where the same goal could be achieved by informing the jury that there were pending criminal charges in Cape Verde, and the potential penalties, without specifically informing the jury that they were "murder"

18

charges. Brandao was prejudiced by the error, especially in light of the Government's arguments that Brandao made a false statement in a passport application to avoid justice for two murder charges. 19.

The court also declined to inform jurors that there were homicide allegations involved in the case, and to inquire whether this affected any juror's ability to remain fair and impartial. Without the prospective jurors fully realizing the nature of the allegations against Brandao, it was impossible for Brandao to fully assess whether the jurors were fair and impartial, and to determine whether any juror should be challenged. 28.

Lastly, the court erroneously precluded Brandao from arguing in any way that the jury should hold it against the Government that they did not call any Cape Verdean authorities in an attempt to meet their burden of proving the charges, and in declining to provide a missing witness instruction. 31.

## ARGUMENT

I.    **INFORMING THE JURY THAT BRANDAO WAS CHARGED WITH "SERIOUS OFFENSES, INCLUDING MURDER" IN A FOREIGN COUNTRY, AND THE GOVERNMENT'S CLAIM THAT BRANDAO MADE A FALSE STATEMENT ON A PASSPORT TO "AVOID JUSTICE" ON THOSE CHARGES, VIOLATED BRANDAO'S DUE PROCESS AND FAIR TRIAL RIGHTS.**

Brandao moved to exclude the criminal charges in Cape Verde in their entirety, or in the alternative, for the jury to be informed only that Brandao had

19

pending criminal charges at the time of the passport application, but to preclude mention of "homicide" or "murder" charges. The court denied this request, and ruled that the Government would be permitted to present evidence that Brandao was charged with "serious offenses, including homicide," and also inform the jury of the potential penalties he was facing. The court inured the parties to suggest language within these parameters to inform the jury. The court found that the pending murder charges were relevant to motive, knowledge and intent.

The court abused its discretion in permitting the Government to inform the jury that Brandao had pending murder charges, rather than simply informing the jury that he had criminal charges. Even informing the jury only as to "pending criminal charges" and the potential penalties would have allowed the Government to paint a full picture as to any motive, knowledge and intent without tainting the jury with the unnecessary information that the charges were "murder" charges. *See United States v. Garcia-Sierra*,994 F.3d 17, 32 (1st Cir. 2021) ("Even if the [evidence] had some probative value, however, Rule 403 contemplates that evidence may still be excluded 'if its probative value is substantially outweighed by a danger of…unfair prejudice.").

**A. The probative value of specifically informing the jury that the pending charges were "homicide" charges was substantially outweighed by the danger of unfair prejudice.**

20

The court reasoned that "[t]he government is not asking a jury to infer that because Defendant may have committed violent crimes in the past, he is more likely to have committed passport fraud" but that "the existence and the gravity of the of the outstanding criminal charges are probative of the defendant's knowledge and motive in this case." R37. The court went on to reason that "[w]ithout any awareness of the charges the jury would have no explanation as to why Mr. Brandao would bother to falsify an ostensibly immaterial detail in his past court [sic] application." R37.

While the fact that there were pending charges, and even the length of the potential sentences may have been relevant to these points, there was no reason for the jury to even learn that the Cape Verdean charges were "violent" in nature. It would be immaterial to the Government's theory that Brandao had a significant incentive to flee regardless of whether he was facing fifteen to thirty years for two counts of murder, or fifteen to thirty years for two counts of a financial crime. That the charges were specifically two separate murder cases – that the Government was permitted to elicit over objection garnered media attention in Cape Verde (R240) – sensationalized the charges, and served only to inflame and sway the jury.

Even "concededly relevant evidence" should be excluded if it would otherwise "lure the factfinder into declaring guilt on a ground different from proof

21

specific to the offense charged." *Id*. at 33, *quoting United States v. DiRosa*, 761 F.3d 144, 153 (1st Cir. 2014); *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

Neither the Government nor the court in conducting a Rule 403 weighing articulated why the same goal of presenting evidence as to motive, knowledge and intent could not be fully realized by informing the jury that there were pending criminal charges, and the potential penalties, without specifically informing the jury that Brandao was facing two separate homicide charges. The Government argued that it was necessary to inform the jury as to the homicide charges so that they jury would understand why someone would take the extreme steps of traveling to Senegal, then allegedly filling out a passport application. In other words, the Government claimed it needed to fully present to the jury that a person facing significant time would use these extreme means to flee the country. The nature of the charges was irrelevant to establishing this: all the jury needed to learn was that Brandao was facing up to fifteen to thirty years on pending criminal charges; categorizing them as "murder" charges served only to inflame the jury, and was more prejudicial than probative. *See United States v. Varoudakis*, 233 F.3d 113, 125 (1st Cir. 2000) (explaining that the propensity inference "is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge").

22

Where the court did not consider alternatives to specifically advising the jury that the pending criminal charges in Cape Verde were "homicide" charges, the court made "a clear error of judgment in weighing" the factors relevant to the decision, thus abused its discretion. *See Picciotto v. Continental Cas. Co.*, 512 F.3d 9, 15 (1st Cir. 2008).

**B. The error in informing the jury that Brandao was allegedly fleeing two separate homicide charges, rather than merely informing the jury that Brandao was facing pending criminal charges, prejudiced Brandao.**

The error was not harmless where it interjected fear and violence into a traditionally white collar offense, without even properly vetting the jurors to exclude any members of the jury who would have been inherently swayed by the homicide charges. *See United States v. Villa-Guillen*, 102 F.4th 508, 518 (1st Cir. 2024). It cannot be said that it is "highly probable" that the error did not contribute to the verdict. *See United States v. Kilmartin*, 944 F.3d 315, 338 (1st Cir. 2019).

In considering whether the error was harmless, this court conducts a "case-specific inquiry," considering "the centrality of the tainted material, its uniqueness, its prejudicial impact, the uses to which it was put during the trial, the relative strengths of the parties' cases, and any telltales that furnish clues to the likelihood that the error affected the factfinder's resolution of a material issue." *Id., quoting United States v. Piper*, 298 F.3d 47, 57 (1st Cir. 2002).

23

This was a short trial, consisting of only a day or so of testimony, with the bulk of the Government's proof coming through records from the Cape Verdean authorities for the two homicide cases. The Government's entire theory was that Brandao was "avoid[ing] justice" for two murder charges, and so he went through the extreme steps of traveling to Senegal, filling out an application, and fleeing to Massachusetts. R332.

During jury selection, the only information the jury learned about the case was that "[g]enerally, the government charges Mr. Brandao with knowingly making a false statement on a passport application." R65. The court declined to inform the jury that they would hear that Brandao was charged with murder in a foreign country, and rejected Brandao's request for the following question to the prospective jurors: "This case involves testimony about murder charges in a different country. Does the fact that murder charges are involved in the case cause you any concern about your ability to be fair and impartial?" R363.[5]

---

[5] One juror volunteered that he had a family member who was murdered. After additional inquiry by defense counsel, who informed the juror that Brandao was accused of homicides in a foreign country, the jury revealed that this fact would render him unable to be fair and impartial, and would be too emotional. R130-131. No other jurors were probed to determine whether the murder charges would affect their impartiality.

24

As a result, the jury – who thought they were seated for a passport fraud case – learned for the first time during the Government's words during its opening statement:

> In 2022, the defendant, Johnny Brandao, was charged with serious offenses in Cape Verde, including two homicides. This case is not about those charges. This case is about what the defendant did to avoid facing those charges. What the defendant did to avoid facing those charges is to lie on a passport application so that he could get an emergency passport and fly home to the United States and away from his problems in Cape Verde.

R175.

Interjecting murder charges into white-collar, inherently non-violent case gravely prejudiced Brandao. As this Court has recognized, "[w]hat excites the emotions in one case may be routine evidence in another case." *Cf. United States v. Houlihan*, 92 F.3d 1271, 1284 (1st Cir. 1996) (finding references to homicides and threats to kill not prejudicial where "not…especially sensational when evaluated in light of other, plainly admissible evidence" relating to "nonstop violence" but "would have stood out like a sore thumb in a prosecution rooted in the relative gentility of white-collar crime"). The murder charges, however, were not "routine" in this case.

While the court provided a limiting instruction during its closing instructions, informing the jury that they were to use the evidence only as to motive, intent and knowledge, it provided this instruction during the closing remarks, and not promptly after the jury was first informed of the murder charges.

25

Moreover, the murder charges were so inflammatory, that a limiting instruction could not overcome the prejudice. *See United States v. Bradley*, 390 F.3d 145, 155 (1st Cir. 2004) (implying instructions hold limited worth where the evidence is "dramatically prejudicial").

Moreover, casting Brandao's conduct as "avoid[ing] justice for two murder charges" cast Brandao as guilty of the charges, and where the court never included in its limiting instruction that Brandao was presumed innocent of those charges – only highlighting that the charges were "still pending" – would have placed the jury in a position to seek justice for those murder charges here, rather than full evaluating the evidence before them. *See Old Chief*, 519 U.S. at 180-181 (noting improper grounds justifying exclusion under Rule 403 include "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)."

The strength of the evidence was not overwhelming where the gravamen of the Government's evidence was based on documents provided by a foreign entity, which were not entirely unambiguous, and there were no percipient witnesses to testify as to the contents of the documents. Some of the documents were inherently inconsistent and contradictory, where they declared the charges against Brandao "null and void," but also Ordered him not to leave the country. Given that he was

26

released, and the Cape Verdean Government declared the charges null and void, it was not out of the realm of possibility that his personal property would be returned to him.

Officer Pigman notified the U.S. Embassy in Senegal in January of 2023 that their Embassy had made a mistake, and had provided Brandao with a new passport even though he had murder charges pending in Cape Verde. All U.S. Passports have a directive to return any recovered passport to the nearest U.S. Embassy. If a person recovered the passport in Dakar, Senegal where Brandao was staying – in the same city, mere minutes from where the Embassy is located – it is not out of the realm of possibility that someone would return the passport to the Senegal Embassy, and that they would return it to Cape Verde officials in order to attempt to right their mistake.

Where the Government did not have any witnesses to affirmatively attest that the passport was not "returned to" Brandao, the jurors could have been swayed by the unduly prejudicial murder charges, and the Government's contention that Brandao was avoiding justice by using the United States as a safe haven to flee to.

Given these circumstances, allowing the jury to learn the nature of the offenses pending in Cape Verde, specifically that he was charged with two separate murders – instead of merely informing the jury that he had pending criminal charges, and informing the jury of the penalties for those offenses – was unduly

27

prejudicial and violated Brandao's due process and fair trial rights under the Fifth, Sixth and Fourteenth Amendments. *See United States v. Garcia-Sierra*, 994 F.3d 17, 35 (1st Cir. 2021). Where the error was not harmless, reversal is required. *See United States v. Villa-Guillen*, 102 F.4th 508, 518 (1st Cir. 2024).

**II.  BRANDAO'S RIGHT TO A FAIR AND IMPARTIAL JURY WAS VIOLATED BY THE INADEQUATE VOIR DIRE, WHERE JURORS WERE NEVER INFORMED OF THE FULL CONTEXT OF THE CHARGES BEFORE DETERMINING THEIR IMPARTIALITY.**

As discussed *infra*, Brandao requested that the jury be informed that there would be evidence of murder allegations in a foreign country and requested that the court inquire as to whether this would affect any juror's ability to be fair and impartial. R363. Instead, the jury was instructed at the outset only that "Generally, the government charges Mr. Brandao with knowingly making a false statement on a passport application." R65.

A criminal defendant has a constitutional right under the Sixth and Fourteenth Amendments to voir dire jurors adequately. "[P]art of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors…Voir dire plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored." Voir dire must be available "to lay bare the foundation of a challenge for cause against a prospective juror." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992); *see also Rosales-*

28

*Lopez v. United States*, 451 U.S. 182, 188 (1981) ("Without an adequate voir dire, the trial judge's responsibility to remove prospective jurors who will not be able to impartially follow the court's instructions and evaluate the evidence cannot be fulfilled.").

The right to challenge prospective jurors help serves the end of taking reasonable steps to ensure that a jury is impartial. *See Ham v. South Carolina*, 409 U.S. 524, 531-532 (1973) (dissenting) (cases cited). The right to challenge, however, "has little meaning if it is unaccompanied by the right to ask relevant questions on voir dire upon which the challenge for cause can be predicated." *Id., citing Swain v. Alabama*, 380 U.S. 202, 221 (1965).

The jury could not learn the full nature of the charges without informing the prospective jurors that the case would involve homicide allegations. Although the question of whether Brandao committed the homicides was not before the jury, the Government used the homicide charges as the entire basis for Brandao's motive to commit passport fraud. When the jurors were vetted, however, they learned only that Brandao was accused of committing passport fraud, and not that he did so to allegedly flee homicide charges from another country.

It was impossible to fully vet jurors for any biases and ensure an impartial jury without at least informing the prospective jurors of the full nature of the allegations, in that the Government was alleging Brandao made false statements on

29

a passport application while he had homicide charges pending against him in another country. Jurors who are asked to pass judgment in a case that involves homicide charges may have very different thoughts and implicit biases relating to the offenses than jurors who believe they are merely sitting on a passport fraud jury. *See* Castrellon, et al, *Social Cognitive Processes Explain Bias in Juror Decisions*, Soc Cogn Affect Neurosci., 2022 October (https://pmc.ncbi.nlm.nih.gov/articles/PMC9949508/). Studies demonstrate that "the seriousness of crimes can contribute to bias in juror decisions" and that the role of emotional responses are higher in more serious cases, which is referred to as "crime-type bias." *Id.* This demonstrates the importance of providing some context as to the case, so that the impartiality of potential jurors may be fully assessed in challenging prospective jurors.

Ultimately, without informing the jurors that there was an allegation that Brandao committed two homicides in a foreign country and that he made false statements in an application for a passport prevented Brandao from fully securing a fair and impartial jury, in violation of his Sixth and Fourteenth Amendment rights, requiring reversal. *Morgan v. Illinois*, 504 U.S. 719, 729 (1992); *see also Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).

**III.    BRANDAO WAS DENIED HIS RIGHTS TO DUE PROCESS AND TO PRESENT A COMPLETE DEFENSE WHERE THE COURT PRECLUDED THE DEFENSE FROM ARGUING REASONABLE DOUBT AS A RESULT OF THE GOVERNMENT'S FAILURE TO PRESENT ANY LIVE WITNESSES FROM CAPE VERDE, AND IN DENYING BRANDAO'S REQUEST FOR A MISSING WITNESS INSTRUCTION.**

Based on Brandao's questions to each witness as to whether they were flown in and accommodated by the Government for their testimony, and that they would immediately return to their home base for official business, the Government filed a "motion to preclude improper argument." R463. The Government requested "the Court to order the defense not to argue that the government failed to call a witness from the Cape Verdean prosecutor's office." R463. The Government argued that "the defense should not be allowed to argue or even suggest that the United States was negligent for failing to produce a witness from the Cape Verdean prosecutor's office." R464. The court allowed the motion. R291.

While the Government did not provide any information in discovery suggesting that any request to bring in a live witness was denied by Cape Verdean Officials, and only provided evidence which outlined a reciprocity process the Government could have engaged in (R465-466), it claimed during argument on the motion that the Department of Justice in Washington, D.C. attempted to secure a witness but they were denied. R293. The Government did not present any evidence at trial that they attempted to secure witnesses from Cape Verde, in order to

31

illuminate for the jury why there were no witnesses from Cape Verde to interpret the records presented by the Government.

Nevertheless, the defense was erroneously precluded from in any way requesting that the jury hold against the Government that they did not present any Cape Verdean officials in order to attempt to meet their burden.

**A. It was error for the court to entirely preclude the defense from arguing that the jury should hold the Government's failure to call any live witnesses from Cape Verde against the Government in determining whether they met their burden to prove the passport fraud charge.**

Even where a court finds that the burden for a missing witness instruction is not met, or that a defendant should be precluded from arguing the jury should infer the testimony would not have been favorable to the Government, this is different from highlighting the lack of a witness to argue evidentiary insufficiency. *United States v. Jimenez-Torres*, 435 F.3d 3, 12 (1st Cir. 2006). A court may not preclude a defendant from "highlight[ing] missing proof to argue that there was insufficient evidence of the defendant's guilt." *Id., citing United States v. Diaz-Diaz*, 433 F.3d 128 (1st Cir. 2005).

Even if this Court finds it was proper for the trial court to preclude a missing witness argument and instruction – i.e., any argument and instruction that the jury could infer the witnesses would have provided testimony that was not favorable to the Government – it was error to impose such wide-ranging handcuffing on the

defense's argument. The Government requested that the defense not be permitted in any way to suggest that the Government should have brought in a witness to testify as to the documents admitted into evidence, and as to the whereabouts of the passport. Brandao, however, should not have been precluded from arguing that the Government's failure to bring in any witnesses from Cape Verde to interpret ambiguous records as to the chain of custody of the passport rendered the Government's proof insufficient to meet their burden beyond a reasonable doubt.

The Government relied almost entirely on Cape Verdean court records to attempt to establish that the passport was in the custody of either the Cape Verdean courts or the prosecutor's office when Brandao was released from custody in Cape Verde, and that it would have been in custody when Brandao made the statement on his passport application that he lost the passport while out to dinner. While the Government disputed that the records were ambiguous, the chain of custody clearly stated that the documents were "returned," and that the charges against Brandao were null and void. Moreover, the first witness to actually observe the passport in the possession of the Cape Verdean prosecutor's office did not do so until May of 2023, almost six months after Brandao's release.

Brandao should have been entitled to argue that to prove Brandao's guilt beyond a reasonable doubt, the Government needed to call a live witness to attest that the passport was in the possession of either the clerk or the prosecutor's office

33

on December 12, 2022, and that it was never returned to Brandao despite that the charges were declared null and void. This was a gap in the Government's proof, and a large gap that Brandao had the right to argue demonstrated the Government failed to prove the charge beyond a reasonable doubt. Precluding this argument violated Brandao's rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments. *See Jimenez-Torres*, 435 F.3d at 12; *Diaz-Diaz*, 433 F.3d at 128. *See also Washington v. Texas*, 388 U.S. 14 (1967); *Taylor v. Illinois*, 484 U.S. 400, 409 (1988).

### B. The court should have provided a missing witness instruction, or at the very least, permitted defense counsel to argue the jury should infer the testimony would not have been helpful to the Government.

The basis for either argument or a request for instructions with regard to an a parties' failure to call a witness that possesses information about a pertinent issue "is the simple proposition that if a party has evidence which will illuminate questions in issue and fails to present it, it may be inferred that such evidence would be harmful to his case." *United States v. Johnson*, 467 F.2d 804, 808 (1st Cir. 1972); 2 Wigmore on Evidence § 285 (3d ed. 1940). No inference is permissible, however, where the unpresented evidence would be merely cumulative, or where the evidence is equally available to either party. *Id.*

A witness's availability is not to be decided on the basis of his physical presence in the court room or his accessibility by writ of habeas corpus or by

34

subpoena, but rather "that a witness's practical and legal availability is to be determined on the basis of his disposition and relationship toward the parties." *Id., citing* McCormick, Law of Evidence § 249, at 534 (1954). The court considers whether the witness would be "favorably disposed" or "peculiarly available" to testify on behalf of the government and "the court must consider the explanation (if any) for the witness's absence…" *See United States v. Perez*, 299 F.3d 1, 3 (1st Cir. 2002); *United States v. Ramos-Gonzalez*, 775 F.3d 483, 500 (1st Cir. 2015).

Here, the Government did not sufficiently combat the claim that Brandao should be entitled to make both a missing witness argument, and receive the instruction. The Government did not present any evidence to the jury to explain its efforts to secure a witness from Cape Verde, and presented scant representations to the judge regarding "efforts" made to secure a witness. Moreover, any witness would have been favorably disposed to the Government, or peculiarly available, where Cape Verdean officials had been working with the Government throughout the investigation of the case, and produced voluminous materials to the Government. As Agent Starr and Officer Pigman testified, the prosecutors office in Cape Verde had been providing documents since the outset, whereas Brandao had no access to these officials in order to secure documents or call anyone as a witness.

35

Had the Government presented any evidence that it attempted to secure the presence of a Cape Verdean official but was denied, then the basis for the argument and the instruction would not have been satisfied. *See Johnson*, 467 F.2d at 808 ("The basis for either argumentative comments or request for instructions with regard to an opponent's failure to call a knowledgeable witness is ... that if a party has evidence which will illuminate questions in issue and fails to present it, it may be inferred that such evidence would be harmful to his case."). The Government did not do so, so the jury was entitled to draw the negative inference.

Completely precluding the argument, and refusing the instruction was in error, and it prejudiced Brandao. Not only was Brandao unable to fully challenge the documents through confronting and cross-examining the authors of the records, he was precluded from fully undermining the records in argument. *Cf. United States v. Orlandella*, 96 F.4d 71, 101 (1st Cir. 2024) (finding even if error in not giving missing witness instruction, defendant not prejudiced because he made missing witness argument to jury).

This violated Brandao's rights to due process, a fair trial and to complete a full defense under the Fifth, Sixth and Fourteenth Amendments. *See United States v. Sandoval*, 6 F.4th 63, 103 (1st Cir. 2021). *See also Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses

of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense.").

## CONCLUSION

Johnny Barros Brandao respectfully requests that this Court reverse the conviction for one count of a false statement in application for a passport, and Order a new trial.

## SIGNATURE

Respectfully Submitted,
JOHNNY BARROS BRANDAO
By his Attorney,
/s/ Jillise McDonough
Jillise McDonough
Law Office of Jillise McDonough
# 1202184
107 Union Wharf
Boston, MA 02109
(617) 263-7400
Jillise@Scapicchiolaw.com

37

## **<u>CERTIFICATE OF COMPLIANCE WITH RULE 32</u>**

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B): this brief contains less than 13,000 words (8,337 words by machine count), excluding the parts of the brief exempted by rule.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Times New Roman 14-point proportionally spaced font.

<u>/s/ Jillise McDonough</u>
Jillise McDonough
Attorney for Appellant Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 28, 2025, I filed the foregoing *Defendant-Appellant's Brief* electronically with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF filers and that they will be served by the CM/ECF system as set forth in the Notice of Electronic Filing:

Donald Lockhart
US Attorney's Office
1 Courthouse Way, Ste 9200
Boston, MA 02110-0000

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
                        Sheet 1

# UNITED STATES DISTRICT COURT
## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHNNY BARROS BRANDAO | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number: **1: 23 CR 10162 - 1 - NMG**<br><br>USM Number: 58232-510<br><br>Jillise M. McDonough, Esq.<br>Defendant's Attorney |

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
    which was accepted by the court.

☑ was found guilty on count(s)   1 _____
    after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1542 | False Statement in Application for Passport | 12/27/22 | 1 |

The defendant is sentenced as provided in pages 2 through _____6_____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

1/13/2025
_____
Date of Imposition of Judgment

_____
Signature of Judge

The Honorable Nathaniel M. Gorton
U.S. District Judge
_____
Name and Title of Judge

01/23/2025
_____
Date

A40

AO 245B (Rev. 11/16) Judgment in Criminal Case
Sheet 2 — Imprisonment

DEFENDANT: JOHNNY BARROS BRANDAO
CASE NUMBER: **1: 23 CR 10162 - 1 - NMG**

Judgment — Page __2__ of __6__

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: **60** month(s)

☐ The court makes the following recommendations to the Bureau of Prisons:

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

A41

AO 245B (Rev. 11/16)  Judgment in a Criminal Case
     Sheet 3 — Supervised Release

| | Judgment—Page __3__ of __6__ |
|---|---|

DEFENDANT: JOHNNY BARROS BRANDAO
CASE NUMBER: **1: 23 CR 10162 - 1 - NMG**

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :     **2** year(s)

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you
      pose a low risk of future substance abuse. *(check if applicable)*
4. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
5. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
6. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

A42

AO 245B (Rev. 11/16)  Judgment in a Criminal Case
                      Sheet 3A — Supervised Release

DEFENDANT:  JOHNNY BARROS BRANDAO                                    Judgment—Page ___4___ of ___6___
CASE NUMBER:   1: 23 CR 10162  - 1    - NMG

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.


Defendant's Signature _____     Date _____

AO 245B (Rev. 11/16)  Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | Judgment — Page 5 of 6 |
|---|---|

DEFENDANT: JOHNNY BARROS BRANDAO
CASE NUMBER: 1: 23 CR 10162 - 1 - NMG

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| TOTALS | $ 100.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTALS | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

  ☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

  ☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A44

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
             Sheet 6 — Schedule of Payments

Judgment — Page ___6___ of ___6___

DEFENDANT: JOHNNY BARROS BRANDAO
CASE NUMBER:    **1: 23 CR 10162  - 1   - NMG**

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $ __100.00__ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

A45